This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**ROBERTA PEKARCIK a/k/a**
**ROBERTA OLIVAS,**

Petitioner-Appellee,

v.                                                    NO. 33,355

**PHILIP PEKARCIK,**

Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**T. Glenn Ellington, District Judge**

Roberta Pekarcik
Santa Fe, NM

Pro se Appellee

Philip Pekarcik
Los Lunas, NM

Pro se Appellant

**MEMORANDUM OPINION**

**ZAMORA, Judge.**

{1}     Appellant (Father) appeals from the district court's order awarding child support arrears. [RP 517, 546] We issued a notice of proposed disposition proposing to affirm. Father has responded with a timely memorandum in opposition, which we have duly considered. We remain unpersuaded that our initial proposed disposition was incorrect, and we therefore affirm.

{2}     In his memorandum in opposition, Father continues to argue that the child support hearing officer (CSHO) should not have considered the Child Support Enforcement Division's (CSED) records of his prior child support payments at the May 17, 2013, hearing. [MIO 2] Father argues that the CSHO should not have asked CSED to "0 out there [sic] records to reflect a zero balance owed." [MIO 2] We understand Father to renew his argument that, because the district court removed CSED as a party to the case in 2009, its records could not be used at the hearing as evidence of Father's prior child support payments. [DS 7; MIO 2] However, as we stated in the notice of proposed summary disposition, the district court's March 27, 2006 order, to which Father refers, only states that any arrearage owed to the State is waived and that CSED is to be withdrawn as a party to the proceedings. [RP 130-131] However, nothing in the order directs CSED to destroy its records. *See Udall v. Townsend*, 1998-NMCA-162, ¶ 3, 126 N.M. 251, 968 P.2d 341 (stating that we will not accept factual assertions in the docketing statement where the record shows

otherwise). Additionally, Father has cited to no legal authority for his argument that Mother could not use the CSED audits as evidence of child support payments made by Father to her. *See ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969 (stating that this Court will not consider propositions that are unsupported by citation to authority); *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (stating that where a party cites no authority to support an argument, we may assume no such authority exists).

**{3}** Father also continues to assert that the CSED audits do not reflect all the payments he made to Mother prior to 2006. [MIO 2] We first note that the record indicates that the CSHO considered Father's evidence that he made payments of $3,316.38, and credited Father for that amount. [RP 516-517] However, as we stated in the notice of proposed summary disposition, on appeal, we do not reweigh the evidence. *See Serna v. Gutierrez*, 2013-NMCA-026, ¶ 29, 297 P.3d 1238.

**{4}** Father next argues that the hearing officer relied on information that was reversed and that he refused to hear Father's evidence regarding payments he made to Mother. [MIO 3] To the extent that Father maintains his argument that the CSHO was biased, as we stated in the notice of proposed summary disposition, this issue was not preserved for appeal. *See Muse v. Muse*, 2009-NMCA-003, ¶¶ 57-60, 145 N.M. 451, 200 P.3d 104 (noting that issues regarding judicial bias must be preserved by a

motion for disqualification in district court); *see also Woolwine v. Furr's, Inc.*, 1987-NMCA-133, ¶ 20, 106 N.M. 492, 745 P.2d 717 ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the [district] court on the same grounds argued in the appellate court.").

{5}     We also reject Father's argument that the hearing officer would not allow him to present new evidence. [MIO 3] Father does not inform us what evidence he sought to introduce nor does Father inform us of the basis for the CSHO's decision to exclude evidence. *See City of Albuquerque v. Westland Dev. Co.*, 1995-NMCA-136, ¶ 34, 121 N.M. 144, 909 P.2d 25 ("The appellant has the burden to point out clearly and specifically the error it asserts on appeal."); *Thornton v. Gamble*, 1984-NMCA-093, ¶ 18, 101 N.M. 764, 688 P.2d 1268 (stating that counsel must set out all relevant facts in the docketing statement, including those facts supporting the district court's decision); *Farmers, Inc., v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063 (stating that we presume the correctness of the [district] court's actions, and the burden is on the appellant to clearly point out how the [district] court erred).

{6}     However, to the extent that Father argues that he was not allowed to present evidence regarding child support payments he made to Mother prior to 2006, as we stated in the notice of proposed summary disposition, this issue first came before the

4

district court in August 2005, on Father's own motion to adjust child support. [RP 19] In that motion, Father alleged that both children lived with him from the fall of 1993 until February of 1996. [RP 19-20] The record indicates that the district court held a hearing on the motion on January 26, 2006, at which time it heard evidence and testimony, Father had notice of the hearing, which he requested be set, and he appeared at the hearing.[RP 28, 31, 38, 40] Following the hearing, the district court found that the children resided with Father from November 1993 through April 1994. [RP 41] The district court also made findings regarding the amount of Father's past child support payments. [RP 41] The district court then remanded the case to a CSHO for consideration of Father's request to modify his child support obligation, effective August 8, 2005. [RP 41-42] The order does not authorize the CSHO to reconsider the district court's factual findings. We therefore reject Father's claim that the CSHO erred in refusing to allow him to present evidence regarding factual matters already determined by the district court.

{7}     Father next argues the interest rate on the judgment was improperly calculated. [MIO 3] We disagree. As we explained in the notice of proposed summary disposition, the district court assessed a 15% interest rate on Father's delinquent child support owed through June 1993. [RP 41, 47] The district court assessed an 8.75% interest rate on delinquent child support owed from July 1993 through May 2004. [RP

5

41, 52] Finally the district court assessed a 4% interest rate on overdue child support from June 2004 through August 2005. [RP 41, 53] NMSA 1978, Section 40-4-7.3(A) (2004), states that the interest rate on delinquent child support shall accrue at a rate of 4% and shall accrue from the date the support is delinquent until the support is paid. However, Section 40-4-7.3 was amended in 2004 to set the interest rate on delinquent child support at 4%. *See* 2004 N.M. Law ch. 41, § 2. Prior to that amendment, the interest rate on delinquent child support was governed by NMSA 1978, Section 56-8-4 (2004). The version of Section 56-8-4(A), in effect until June of 1993, assessed a 15% interest rate on post-judgment interest and decrees. *See Sanchez v. Siemens Transmission Sys.*, 1991-NMCA-028, ¶ 50, 112 N.M. 236, 814 P.2d 104. In 1993, Section 56-8-4(A) was amended to change the applicable interest rate on post-judgment interest generally at 8.75%, and to only allow an assessment of a 15% post judgment interest rate where the judgment is based on tortious conduct, bad faith, or intentional or willful acts. *See* 1993 N.M. Law ch. 112, § 1. However, prior to June 1993, the statute applied a 15% interest rate on post-judgment interest without requiring that the judgment be based on bad faith or tortious conduct. *See Grynberg v. Roberts*, 1985-NMSC-040, ¶ 17, 102 N.M. 560, 698 P.2d 430.

{8}     The order merely applies the applicable statutory interest rates on post-judgment interest at the time the child support payments became due. We therefore

6

reject Father's argument that the interest rates were improperly assessed. *See Farmers, Inc.,* 1990-NMSC-100, ¶ 8 (stating that the appellate court presumes that the [district] court is correct, and the burden is on the appellant to clearly demonstrate that the [district] court erred).

{9} Father also argues that because he was not found to have absconded, the Court should enforce the twelve year statute of limitations and not award Mother extra money for years when Tricia was emancipated. [MIO 3-4] We understand Father to refer to NMSA 1978, Section 40-11A-636(C) (2009), which states that the district court can award retroactive child support to the date of the child's birth but not exceeding twelve years. However, the CSHO did not award retroactive child support beyond twelve years. [RP 515] We therefore reject this argument.

{10} Finally, Father asserts that Mother committed perjury during the proceedings, and that the evidence presented by Mother was not convincing. [MIO 3-4] However, we view this as an invitation to judge the credibility of a witness and reweigh evidence, which we cannot do. *See Webb v. Menix*, 2004-NMCA-048, ¶ 8, 135 N.M. 531, 90 P.3d 989 ("This Court does not reweigh the evidence or judge the credibility of the witnesses."); *see also Mascarenas v. Jaramillo*, 1991-NMSC-014, ¶ 6, 111 N.M. 410, 806 P.2d 59 (stating that it is well established in New Mexico that only the trier of facts may reconcile inconsistent or contradictory witness statements and

determine where the truth lies); *Williams v. Williams*, 1989-NMCA-072, ¶ 7, 109 N.M. 92, 781 P.2d 1170 (explaining that the duty to weigh the credibility of witnesses and to resolve conflicts in the evidence lies with the [district] court, not the appellate court).

{11}    For these reasons, we affirm the district court.

{12}    **IT IS SO ORDERED.**


_____
**M. MONICA ZAMORA, Judge**

**WE CONCUR:**


_____
**RODERICK KENNEDY, Chief Judge**


_____
**LINDA M. VANZI, Judge**